

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 9, 2024**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| MUTSCHLER & MUTSCHLER, LLC | § | |
| | § | Case no.23-32146 -11 |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |

### ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION

CAME ON FOR CONSIDERATION by the Court at the confirmation hearing held on February 8, 2024, the Debtor's Plan of Reorganization dated December 22, 2023 as modified in open Court ("Plan") filed by Mutschler & Mutschler, LLC, Debtor in the above-styled and numbered case. The Plan having been transmitted to all creditors, equity interest holders and parties-in-interest

ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - Page 1

and the Court having reviewed the Plan and the Court having been informed that the Objections to Confirmation have been resolved by agreements announced to the Court and contained in this Order, and after hearing the evidence presented, testimony of witnesses, and argument of counsel, concludes as follows:

1. The Plan complies with the applicable provisions of Title 11, and the Debtor, as the plan proponent, has complied with the applicable provisions of Title 11.

2. The Plan has been proposed in good faith and not by any means forbidden by law.

3. The requisite number of impaired classes of claims or interests voting have voted to accept the Plan.

4. All payments made or promised to be made by the Debtor or any other person for services or for costs and expenses in, or in connection with, the Plan, and incident to the case, have been disclosed to the Court and are reasonable or, if to be fixed after Confirmation of the Plan, will be subject to the approval of the Court.

5. The identity, qualifications, and affiliations of the persons who are to serve the Debtor, after Confirmation of the Plan, have been fully disclosed, and the appointment of such persons to such offices, or their continuance therein, is equitable, and consistent with the interests of the creditors and equity security holders and with public policy.

6. The identity of any insider that will be employed or retained by the Debtor and his compensation has been fully disclosed.

7. The Plan does not affect any rate change of any regulatory commission with jurisdiction over the rights of the Debtor.

8. The Plan is not likely to be followed by further need for reorganization.

9. The Plan meets the requirements of 11 U.S.C. 1191(a).

10. The Plan does not affect any retiree benefits.

11. The modifications announced in Open Court do not adversely affect any party who has previously voted to accept the Plan.

12. The Debtor reserves the right to object to the amount and allowance of all claims after confirmation. All such objections shall be filed within sixty (60) days of the Effective Date, as defined in the Plan.

It is accordingly,

ORDERED ADJUDGED AND DECREED that the modification are approved and Debtor's Plan of Reorganization, as attached hereto as Exhibit "A", is confirmed, as modified herein. It is further,

ORDERED, ADJUDGED AND DECREED the terms of the Plan with respect to Classes 3 and 4 are stricken. It is further,

ORDERED, ADJUDGED AND DECREED the treatment of Class 7 is modified to read as follows:

**Class 7 Allowed Secured Claims of Phillip Doelling**) are impaired and shall be satisfied as follows:

Doelling obtained that certain Default Judgment against Debtor on March 31, 2023 from the 471th District Court, Collin County, Texas, and the amount owing under the Judgment as of the Petition Date was $133,572.96 ("Judgment"). On or about September 28, 2023, Doelling had that certain Writ on Garnishment executed to enforce the Judgment. The Garnishment created a lien on the funds of the Debtor held in its Bank account at Alliance Bank. After the bankruptcy was filed the Garnishment was released and the funds in the bank turned over to Debtor subject to the claims of Doelling and the Court's cash collateral orders. Through the Bankruptcy Court's Final Cash Collateral Order entered on December 15, 2023, Doelling was granted replacement liens co-existent with his pre-petition liens, under 11 U.S.C. § 552 in after acquired property of the estate, except as to any Chapter 5 causes of action. Such replacement liens are deemed to be valid, enforceable, and automatically perfected as of the Petition Date, and no further notice, filing, or other act shall be required to effect such perfection.

Debtor has paid Doelling $1,000 per month during the course of this bankruptcy case pursuant to the Court's cash collateral orders. In total for Doelling's Class 7 Claim, the Debtor shall pay Doelling a total of $54,136 with interest at the rate of 6% per annum ("Doelling Claim"). As of February 8, 2024, Doelling has received $4,000 in payments from the Debtor, which shall be credited toward the total of Doelling's Class 7 Claim. The balance of the Doelling's Class 7 Claim as of the Effective Date will be paid in equal monthly installments of $1,000. Doelling shall retain his lien as described herein until he is paid in full in accordance with the terms of this Plan. Upon receipt of all payments in good funds to Doelling under the Plan, both in Class 7 for Doelling's secured claim and in Class 8 for Doelling's deficiency unsecured claim, Doelling shall release his Judgment, but only as to the Debtor and not any other Judgment debtors, specifically including Larry Allen Mutschler. Notwithstanding any other provision herein, nothing in the Plan affects the Judgment as to Larry Allen Mutschler, and the Plan does not prevent or prejudice Doelling from execution or enforcement of the Judgment in any way as to Larry Allen Mutschler. Likewise, nothing in the Plan affects or prejudices any rights of Larry Allen Mustchler with respect to the Judgment.

The Class 7 claimant is impaired under this Plan.

### End of Order ###

Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788



PROPOSED ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § § | |
| MUTSCHLER & MUTSCHLER, LLC | § § § | Case no.23-32146-11 |
| | § § | CHAPTER 11 |
| DEBTOR | § | |

**PLAN OF REORGANIZATION OF MUTSCHLER & MUTSCHLER, LLC
PURSUANT TO SECTION 1190
OF THE BANKRUPTCY CODE DATED DECEMBER 22, 2023**

TO:  ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

Mutschler & Mutschler, LLC ("Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division ("Court") on September 27, 2023. The Debtor operate a construction company that erects steel buildings in the Dallas/Fort Worth area. The Debtor proposes to restructure its current indebtedness and continue its operations to provide a dividend to the creditors of Debtor.

```
DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE
DATED DECEMBER 22, 2022 - Page 1
```

## Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. There are different types of Chapter 11 designations. In this case, the Debtor has chosen to proceed under a Subchapter V- Small Business Debtor Reorganization ("Subchapter V"). Pursuant to a Subchapter V Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

## Explanation of the Process of Confirmation

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## Voting Procedures

**Unimpaired Class**. Claimants in Classes 1 and 9 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Classes**. The Class 2 through 8 Claimants are impaired as defined by Section 1124 of the Code. The Debtors are seeking the acceptance of the Plan by Claimants in Classes 2 through 8. Each holder of an Allowed Claim in Classes 2 through 8 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE
DATED DECEMBER 22, 2022 - Page 2

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 850, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

### Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured and tax creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

### ARTICLE II
### DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.  "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.  "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is

no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6. **"Bar Date for Administrative Claims"** shall mean the day that is thirty days after the Confirmation Date of the Plan. The Bar Date for Administrative Claims shall include any claim pursuant to §506 of the Code as well as any claim under §503 of the Code.

7. **"Case"** shall mean this Chapter 11 case.

8. **"Claim"** shall mean any right to payment from the Debtor(s) as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

9. **"Claimant"** shall mean the holder of a Claim.

10. **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

11. **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

12. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

13. **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

14. **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, presiding over these Chapter 11 reorganization cases, or any successor court of competent jurisdiction.

15. **"Creditor"** shall mean any person having a Claim against Debtor.

16. **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

17. **"Disbursing Agent"** shall mean the Reorganized Debtor even in the event of a confirmation under 11 U.S.C. §1191(b).

18. **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

19. **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20. **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21. **"Final Confirmation Date"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22. **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23. **"Petition Date"** shall mean the date on which the Debtors filed these proceedings, September 27, 2023.

24. **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25. **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section

507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27. **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28. **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29. **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

30. **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

31. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

32. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

III
REPRESENTATIONS

**NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMEND THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED**

TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTORS IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV

### FINANCIAL PICTURE OF THE DEBTOR

Mutschler & Mutschler, LLC ("Debtor") started in 2019 as a steel Building construction company. The Debtor build residential and commercial structures including, warehouses, barndominiums and shops. The Debtor also constructed carports and steel covers. The company was profitable and was operating successfully. In September 2023 the Debtor had its account frozen. an investigation revealed that there was a judgment against the Debtor from a former

customer. At the time of the freezing of the accounts, the Debtor was completely unaware of the existence of any lawsuit and unaware of the judgment. The freezing of the accounts lead to the filing of the bankruptcy to allow the Debtor to work out a plan for repayment of the judgment creditor along with it other creditors.

### Future Income and Expenses Under the Plan

The Debtor filed this on September 27, 2023 and reached an agreement with the judgment creditor to release the Debtor's bank accounts to allow it to continue operations. The Debtor has operated post bankruptcy and has been able to pay all their bills as they have come due.

Attached hereto as Exhibit "A" are projections of gross income, expenses and net operating income for the next year for the Debtor. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes its can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is owned by Allen Mutschler. Upon Confirmation of the Debtor's Plan, the ownership will remain the same.

## ARTICLE V.

### ANALYSIS AND VALUATION OF PROPERTY

The Debtor's assets are money in the bank, 4 vehicles and machinery and equipment used in the business. The value of the Debtors' assets, if liquidated, would not provide a greater dividend to the unsecured creditors than proposed under this Plan.

A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit "B"**.

## ARTICLE VI
### SUMMARY OF PLAN OF REORGANIZATION

The Debtors will continue in business. The Debtor's Plan will break the existing claims into 9 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date, unless a different payment date noted herein.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests. On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities and obligations for the implementation of this Plan.

DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE
DATED DECEMBER 22, 2022 - Page 8

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtors' attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtors' case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000.

' The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimant (Allowed Internal Revenue Service Claims)** are impaired and shall be satisfied as follows: The Allowed Amount of Allowed Internal Revenue Service Claims shall be paid out of the revenue from the continued operations of the Debtor. The Internal Revenue Service (IRS) has filed a Priority Proof of Claim in the amount of $810.61. The IRS Allowed Priority Claim it will be paid in full 30 days after the Effective Date.

Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a Federal (or state) tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

(a) If the Debtor or its successor in interest fails to make any Plan payments, and deposits of any currently accruing employment or sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(b) If the United States declares the debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

(c) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default and upon the third event of default, the IRS may proceed to collect on all accounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.

(d) The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(e) All payment will be sent to: Gina Daniels, Internal Revenue Service, 1100

DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE
DATED DECEMBER 22, 2022 - Page 9

Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth in paragraph (4)(a)-(d) above.

The Class 2 claimant is impaired under this Plan.

**Class 3 Allowed Secured Claims of GM Financial**) are impaired and shall be satisfied as follows: The Debtor executed that certain Retail Installment Agreement ("Agreement") for the purchase of that certain 2019 Silverado VIN 1GC4KYEY3KF279503 ("Vehicle #1") WITH gm Financial ("GM"). The Debtor executed that certain Retail Installment Agreement ("Agreement") for the purchase of that certain 2019 Escalade VIN 1GYS3AKJ9KR115524 ("Vehicle #2") with GM. The Debtor shall pay the outstanding indebtedness to GM on Vehicle #1 in the amount of $20,962.73 and Vehicle #2 in the amount of $24,830.65 in 60 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date. GM shall retain its lien on Vehicle #1 and Vehicle #2 until paid in full in accordance with the terms of this Plan.

The Class 3 claimant is impaired under this Plan.

**Class 4 Allowed Secured Claims of TD Auto**) are impaired and shall be satisfied as follows: The Debtor executed that certain Retail Installment Agreement ("Agreement") for the purchase of that certain 2020 Silverado VIN ending in 6543 ("Vehicle") with Auto Finance ("TD"). The Debtor shall pay the outstanding indebtedness to TD of $33,826 in 60 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date. TD shall retain its lien on the Vehicle until paid in full in accordance with the terms of this Plan.

The Class 4 claimant is impaired under this Plan.

**Class 5 Allowed Secured Claims of Interbank**) are impaired and shall be satisfied as follows: The Debtor executed that certain Promissory Note ("Note") for the purchase of a skid steer and lifts ("Collateral") in the original principal amount of $60,121 with Interbank ("Interbank"). The Debtor shall pay the outstanding indebtedness to Interbank in the amount of $40,000 in 60 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date. Interbank shall retain its lien on the Collateral until paid in full in accordance with the terms of this Plan.

The Class 5 claimant is impaired under this Plan.

**Class 6 Allowed Secured Claims of John Deere**) are impaired and shall be satisfied as follows: The Debtor executed that certain Agreement ("Agreement") for the purchase of a skid steer

DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE
DATED DECEMBER 22, 2022 - Page 10

("Collateral #1") with John Deere Financial ("Deere"). The Debtor executed that certain Agreement ("Agreement") for the purchase of a forklift ("Collateral #2") with Deere. The Debtor shall pay the outstanding indebtedness to Deere on Collateral #1 in the amount of $9,578 and Collateral #2 in the amount of $6,123 in 60 equal monthly installments with interest at the rate of 5% per annum commencing on the Effective Date. Deere shall retain its lien on Collateral #1 and Collateral #2 until paid in full in accordance with the terms of this Plan.

The Class 6 claimant is impaired under this Plan.

**Class 7 Allowed Secured Claims of Phillip Doelling**) are impaired and shall be satisfied as follows: Doelling obtained that certain Default Judgment against Debtor on March 23, 2023 from the 471th District Court, Collin County, Texas in the original amount of $133,572.96 ("Judgment"). On or about September 18, 2023, Doelling had that certain Writ on Garnishment executed to enforce the Judgment. The Garnishment created a lien on the funs of the Debtor held in its Bank account at Alliance Bank. After the bankruptcy was filed the Garnishment was released and the funds in the bank turned over to Debtor subject to the claims of Doelling. Debtor has paid Doelling $4,000 during the course of this bankruptcy case. The Debtor shall pay Doelling $36 payments of $1,000 on the 5th day of each month until paid in full in accordance with the terms of this Plan. Upon receipt of the payments under the Doelling shall release his Judgment.

The Class 7 claimant is impaired under this Plan.

**Class 8 Claimants (Allowed Unsecured Creditors)** are impaired and shall be satisfied as follows:  All unsecured creditors of Debtor shall share pro rata in the unsecured creditors pool. The Debtor shall make monthly payments commencing thirty (30) days after the Effective Date of $1,000 into the unsecured creditors' pool. The amount represents the Debtor's disposable income as that terms is defined in 11 U.S.C. § 1191(d). The Debtor shall make distributions to the Class 8 creditors every 90 days commencing 90 days after the first payment into the unsecured creditors pool. The Debtor shall make 36 payments into the unsecured creditors pool.

The Class 8 creditors are impaired.

**Class 9 ( Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan, however, they will be allowed to retain their ownership in the Debtor.

Class 9 Claimants are not impaired under the Plan.

## ARTICLE VII
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the businesses to fund the Plan.

## ARTICLE VIII.
## FEASIBILITY OF PLAN

The projections of the future business operations for the Debtor are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the historical operations of the business. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE IX
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE X.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtors' Plan is not confirmed, the Debtor's bankruptcy cases may be converted to a cases under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to their creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. In Debtor case, the assets have a value that would be less than the amounts asserted by the secured and tax creditors in the case, therefore, a liquidation would not result in a distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XI
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

## ARTICLE XII
## EVENTS OF DEFAULT AND EFFECT THEREOF

Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within fifteen (15) days of receipt of written notice of such default to the defaulting Reorganized Debtor at Allen Mutschler at allen.mutschler@sbcglobal.net. The Debtor will be entitled to no more than two (2) notice of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated.

## ARTICLE XIII
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XIV
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. Most notably, the Debtors ability to maintain profitable operations in the current economic climate. The Plan contemplates that there will be excess funds to pay creditor Claims.

## ARTICLE XVI
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVII

## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate which would increase the proposed repayment under this Plan.

Dated: December 22, 2023.

Respectfully submitted,

Mutschler & Mutschler, LLC

By: Allen Mutschler
Its: Managing Member

| | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INCOME | $ 158,325.00 | $ 169,400.00 | $ 164,035.00 | $ 169,300.00 | $ 164,300.00 | $ 169,800.00 | $ 169,915.00 | $ 163,985.00 | $ 169,300.00 | $ 164,200.00 | $ 169,325.00 | $ 169,620.00 | $ 2,001,505.00 |
| EXPENSE | | | | | | | | | | | | | |
| Concrete | $ 19,000.00 | $ 20,400.00 | $ 19,700.00 | $ 20,400.00 | $ 19,700.00 | $ 20,400.00 | $ 20,400.00 | $ 19,700.00 | $ 20,400.00 | $ 19,700.00 | $ 20,400.00 | $ 20,400.00 | $ 240,600.00 |
| Accounting | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000.00 |
| Auto Maint/Repair | 175.00 | 200.00 | 190.00 | 200.00 | 190.00 | 200.00 | 200.00 | 190.00 | 200.00 | 190.00 | 200.00 | 200.00 | 2,335.00 |
| Windows/Doors | 750.00 | 850.00 | 820.00 | 850.00 | 820.00 | 850.00 | 850.00 | 820.00 | 850.00 | 820.00 | 850.00 | 850.00 | 9,980.00 |
| Overhead Doors | 9,500.00 | 10,200.00 | 9,870.00 | 10,200.00 | 9,870.00 | 10,200.00 | 10,200.00 | 9,870.00 | 10,200.00 | 9,870.00 | 10,200.00 | 10,200.00 | 120,380.00 |
| Drilling | 175.00 | 210.00 | 200.00 | 210.00 | 200.00 | 210.00 | 210.00 | 200.00 | 210.00 | 200.00 | 210.00 | 210.00 | 2,445.00 |
| Electrical | 900.00 | 1,000.00 | 975.00 | 1,000.00 | 975.00 | 1,000.00 | 1,000.00 | 975.00 | 1,000.00 | 975.00 | 1,000.00 | 1,000.00 | 11,800.00 |
| Equipment Maintenance | 160.00 | 175.00 | 170.00 | 175.00 | 170.00 | 175.00 | 175.00 | 170.00 | 175.00 | 170.00 | 175.00 | 175.00 | 2,065.00 |
| Gas/Diesel | 1,950.00 | 2,125.00 | 2,050.00 | 2,125.00 | 2,050.00 | 2,125.00 | 2,125.00 | 2,050.00 | 2,125.00 | 2,050.00 | 2,125.00 | 2,125.00 | 25,025.00 |
| Insulation | 1,900.00 | 2,100.00 | 2,000.00 | 2,100.00 | 2,000.00 | 2,100.00 | 2,100.00 | 2,000.00 | 2,100.00 | 2,000.00 | 2,100.00 | 2,100.00 | 24,600.00 |
| Insurance - Auto/Eqpt | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 30,000.00 |
| Insurance - Liability | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 9,600.00 |
| Internet | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 1,440.00 |
| Materials | 11,000.00 | 12,000.00 | 11,600.00 | 12,000.00 | 11,600.00 | 12,000.00 | 12,000.00 | 11,600.00 | 12,000.00 | 11,600.00 | 12,000.00 | 12,000.00 | 141,400.00 |
| Paint | 150.00 | 175.00 | 170.00 | 175.00 | 170.00 | 175.00 | 175.00 | 170.00 | 175.00 | 170.00 | 175.00 | 175.00 | 2,055.00 |
| Payroll | 32,700.00 | 35,000.00 | 33,870.00 | 35,000.00 | 33,870.00 | 35,000.00 | 35,000.00 | 33,870.00 | 35,000.00 | 33,870.00 | 35,000.00 | 35,000.00 | 413,180.00 |
| Permits | 70.00 | 75.00 | 70.00 | 75.00 | 70.00 | 75.00 | 75.00 | 70.00 | 75.00 | 70.00 | 75.00 | 75.00 | 875.00 |
| Phone | 540.00 | 575.00 | 575.00 | 575.00 | 575.00 | 575.00 | 575.00 | 575.00 | 575.00 | 575.00 | 575.00 | 575.00 | 6,865.00 |
| Pumps | 175.00 | 210.00 | 203.00 | 210.00 | 203.00 | 210.00 | 210.00 | 203.00 | 210.00 | 203.00 | 210.00 | 210.00 | 2,457.00 |
| Rent | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 |
| Rentals | 575.00 | 630.00 | 600.00 | 630.00 | 600.00 | 630.00 | 630.00 | 600.00 | 630.00 | 600.00 | 630.00 | 630.00 | 7,385.00 |
| Sand | 370.00 | 400.00 | 385.00 | 400.00 | 385.00 | 400.00 | 400.00 | 385.00 | 400.00 | 385.00 | 400.00 | 400.00 | 4,710.00 |
| Septic | 70.00 | 75.00 | 72.00 | 75.00 | 72.00 | 75.00 | 75.00 | 72.00 | 75.00 | 72.00 | 75.00 | 75.00 | 883.00 |
| Sheet Metal | 23,350.00 | 25,000.00 | 24,200.00 | 25,000.00 | 24,200.00 | 25,000.00 | 25,000.00 | 24,200.00 | 25,000.00 | 24,200.00 | 25,000.00 | 25,000.00 | 295,150.00 |
| Spray Foam | 1,400.00 | 1,500.00 | 1,450.00 | 1,500.00 | 1,450.00 | 1,500.00 | 1,500.00 | 1,450.00 | 1,500.00 | 1,450.00 | 1,500.00 | 1,500.00 | 17,700.00 |
| Steel | 19,875.00 | 21,250.00 | 20,500.00 | 21,250.00 | 20,500.00 | 21,250.00 | 21,250.00 | 20,500.00 | 21,250.00 | 20,500.00 | 21,250.00 | 21,250.00 | 250,625.00 |
| Subcontractors | 20,580.00 | 22,000.00 | 21,200.00 | 22,000.00 | 21,200.00 | 22,000.00 | 22,000.00 | 21,200.00 | 22,000.00 | 21,200.00 | 22,000.00 | 22,000.00 | 259,380.00 |
| Supplies | 2,775.00 | 2,975.00 | 2,875.00 | 2,975.00 | 2,875.00 | 2,975.00 | 2,975.00 | 2,875.00 | 2,975.00 | 2,875.00 | 2,975.00 | 2,975.00 | 35,100.00 |
| Tax - Franchise | 405.00 | 405.00 | 405.00 | 405.00 | 405.00 | 405.00 | 405.00 | 405.00 | 405.00 | 405.00 | 405.00 | 405.00 | 4,860.00 |
| Utilities | 60.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 775.00 |
| Waste Disposal | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400.00 |
| TOTAL EXPENSES | $ 153,725.00 | $ 164,715.00 | $ 159,335.00 | $ 164,715.00 | $ 159,335.00 | $ 164,715.00 | $ 164,715.00 | $ 159,335.00 | $ 164,715.00 | $ 159,335.00 | $ 164,715.00 | $ 164,715.00 | $ 1,944,070.00 |

plan payments

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| gm | 865 | 865 | 865 | 865 | 865 | 865 | 865 | 865 | 865 | 865 | 865 | 865 | 10380 |
| interbank | 755 | 755 | 755 | 755 | 755 | 755 | 755 | 755 | 755 | 755 | 755 | 755 | 9060 |
| deere | 295 | 295 | 295 | 295 | 295 | 295 | 295 | 295 | 295 | 295 | 295 | 295 | 3540 |
| td auto | 638 | 638 | 638 | 638 | 638 | 638 | 638 | 638 | 638 | 638 | 638 | 638 | 7656 |
| doelling | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 12000 |
| unsecured | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 12000 |
| | 4553 | 4553 | 4553 | 4553 | 4553 | 4553 | 4553 | 4553 | 4553 | 4553 | 4553 | 4553 | 54636 |

EXHIBIT 'B'

LIQUIDATION ANALYSIS

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| ASSETS | | |
| Cash | 28,000 | 28,000 |
| Equipment | 30,000[1] | 40,000 |
| vehicle | 75,000[2] | 95,000 |
| | | |
| LIABILITIES | | |
| ADMINISTRATIVE | 15,000 | 15,000 |
| TAXES | 1,000 | 1,000 |
| SECURED CREDITORS | 135,000 | 169,000 |
| UNSECURED CREDITORS | 450,000 | 450,000 |
| | | |
| DISTRIBUTION TO UNSECURED | 0% | 10% |

---

[1] Debtor values the equipment in the location at 80% of its current appraised value if liquidated to account for removal, sales costs and a forced sale.

[2] Debtor's vehicle is valued a 75% of its current value based upon a forced sale and costs associated therewith.